George E. Butler, Jr. Washington County Attorney 280 North College, Suite 501 Fayetteville, Arkansas 72701
Dear Mr. Butler:
You have requested approval, pursuant to the Interlocal Cooperation Act, A.C.A. § 25-20-101 et seq., of a document captioned "Interlocal Cooperation Agreement" (the "Agreement"), between Washington County, Arkansas, and the City of Fayetteville, Arkansas. The Agreement represents that it is made pursuant to A.C.A. § 14-14-910, which authorizes counties to enter into interlocal agreements with other units of government, and A.C.A. § 25-20-101 et seq., the Interlocal Cooperation Act. Your request seeks the approval by this office of the Agreement pursuant to the latter legislation. Under the Agreement, the County agrees to "exercise jurisdiction within the corporate boundaries of the City for purposes of regulating Community Sewer Systems." The Agreement represents that "county personnel have gained substantial experience and expertise in administering Community Sewer Systems, regulations and bonding requirements." Subsection (C) of the Agreement provides that each customer of a Community Sewer System pay the County "a $2.00 monthly fee . . . for its proportional administrative costs . . . including, but not limited to salaries and fringe benefits for any staff retained to assist in administering the county ordinances and regulations." Subsection D of the Agreement requires that any "reimbursement" by City customers to the County in excess of the recited $2.00 per month be approved by the City's governing body. *Page 2 
RESPONSE
In my opinion, a question exists whether the Agreement contemplates a true joint undertaking of the sort that requires my approval under the Interlocal Cooperation Act, as opposed to a mere contract that does not require my approval. Assuming the Agreement indeed involves what might be characterized as a joint undertaking, I would approve the Agreement as submitted in that it meets the other requirements under the Act. The question of whether the Agreement might be independently permissible under A.C.A. § 14-14-910 is one I am not statutorily charged with determining and hence should be addressed to the county attorney.
I will initially analyze the Agreement to determine its compliance with the Interlocal Cooperation Act, A.C.A. § 25-20-101 through-108 (Repl. 2002 Supp. 2007), which you report is the basis for your request for my approval. Because the Agreement characterizes itself as an interlocal agreement entered into pursuant to the Interlocal Cooperation Act, I will analyze the document pursuant to the standard applicable under that legislation.
In the first instance, I must determine whether the parties to the Agreement indeed qualify as "public agencies" — a term the Arkansas Code defines in pertinent part as follows:
 "Public agency" means . . . any political subdivision of this state . . .
A.C.A. § 25-20-103(1)(B) (Supp. 2007). In my opinion, a city and a county clearly qualify as "public agencies" under this definition. See, e.g., A.C.A. § 12-9-102(3) and 12-9-401(7) ("`Political subdivision' means any county, municipality, township, or other specific local unit of general government."); A.C.A. § 12-50-103(8) ("`Political subdivision' means a city of any class, a town, or a county."); A.C.A. § 14-77-102(f)(4) ("`Political subdivision means any county, municipality, or school district of the State of Arkansas."); A.C.A. § 15-6-103(8) ("`Political subdivision' means a county, municipality, and any other unit of local government . . . authorized by law to perform governmental functions.")
Having concluded that the parties are entities of the sort that might enter into a joint enterprise under the Interlocal Cooperation Act, I must next determine whether the proposed agreement in fact involves a joint undertaking of the sort that requires my approval, as opposed to a straightforward purchase contract of the *Page 3 
sort the parties might enter into without my approval. See A.C.A. §25-20-108. I believe the Agreement, which contemplates residents of the City served by a Community Sewer System[1] being obliged by the City to pay the County a fee for regulating that System, may in effect amount to no more than a contractual relationship between the City and the County. At issue with respect to this question is whether the following condition applies:
 Any governmental powers, privileges, or authority exercised or capable of exercise by a public agency of this state alone may be exercised and enjoyed jointly with any other public agency of this state which has the same powers, privileges, or authority under the law and jointly with any public agency of any other state of the United States which has the same powers, privileges, or authority, but only to the extent that laws of the other state or of the United States permit the joint exercise or enjoyment.
A.C.A. § 25-20-104(a). Although subsection (F) of the Agreement proposes the creation of a board comprising "the County Judge, the Mayor of Fayetteville and a third person mutually agreed upon" in order "to oversee this joint co-operative effort," notwithstanding the existence of this board, the referenced "effort" may in fact be considered no more than the County's providing "regulatory services" over Community Sewer Systems pursuant to "county ordinances and rules and regulations" of the County's own devising. See Agreement, subsection (E). If so, although I cannot predict how a finder of fact would view this situation, the arrangement in question might be seen more as a contractual agreement than an interlocal agreement pursuant to the Interlocal Cooperation Act. *Page 4 
The Interlocal Cooperation Act requires that an interlocal agreement contain the following provisions:
 (1) The duration of the agreement;
 (2) The purposes of the agreement;
 (3) The manner of financing the joint or cooperative undertaking and of establishing and maintaining a budget for it;
 (4) The methods of accomplishing termination of the agreement and for the disposal of property, if any, upon termination;
 (5) Any other necessary and proper matters.
A.C.A. § 25-20-104(c). In my opinion, the Agreement contains all of these provisions except, possibly, for the requirement that it provide for a true "cooperative undertaking," as distinct from a mere contract that will not require my approval under A.C.A. § 25-20-108. However, assuming a finder of fact were to determine that the provisions of the Agreement indeed involved a "cooperative undertaking," I would conclude that the Agreement violates no substantive provision of Arkansas law and would approve the Agreement as submitted.
As noted above, you have also submitted the Agreement pursuant to A.C.A. § 14-14-910 (Repl. 1998), subsection (b)(1) of which authorizes counties to execute "any service contract entered into by the county court which establishes a permanent or perpetual relationship thereby obligating the financial resources of a county." Subsection (b)(2) of this statute defines the term "permanent or perpetual relationship" to mean the following:
 [A]ny agreement exhibiting an effective duration greater than one (1) year, twelve (12) calendar months, or an agreement exhibiting no fixed duration but where the apparent intent of the agreement is to establish a permanent or perpetual relationship. Such interlocal agreement shall be authorized by ordinance of the quorum court. *Page 5 
A.C.A. § 14-14-910; see Ark. Op. Att'y Gen. No. 2006-006 (generally discussing the scope of this requirement). Subsection (a) of the Agreement describes its term as a "long-term relationship" — a designation that might well satisfy the provision of 14-14-910 requiring a "permanent or perpetual relationship." However, as noted in 14-14-910(d), an agreement under this statute will be subject to review by this office only if one of the parties thereto is the state or one of its agencies — a condition that does not apply to the Agreement at issue in this instance. Subsection (d) requires only that an agreement between or among local subdivisions of the state be submitted to "legal counsel" prior to its adoption.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] The term "community service system" is referenced in the Code only in A.C.A. § 14-25-201 (Supp. 2007), which was enacted pursuant to Acts2007, No. 844, § 1. Subsection (a) of this statute defines the term "responsible management entity" — a coinage referenced in subsection (D) of the Agreement as being the recipient of the $2.00-per-month levy against members of the Community Service System — as meaning "a wastewater treatment service provider organized and operating under this section." Subsection (c) of this statute provides in pertinent part:
 Any of the following may enter into an agreement to become a responsible management entity for the purpose of providing responsible management of wastewater treatment systems, including community sewer systems and groups of septic systems in a contiguous development, where municipal sewer service is not available:
 (1) A political subdivision of the state[.] *Page 1